UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROY SCOTT ANDERSON,
     Plaintiff,

  v.                                                    Case No. 18-C-1498

MICHAEL SEEGER and
CHAD MELBY,
     Defendants.

---

## ORDER

     Plaintiff Roy Scott Anderson is an inmate at Kenosha Correctional Center and is representing himself in this civil rights lawsuit. He is proceeding against the defendants on a claim that they violated his Fourth Amendment rights when they seized and searched him on September 22, 2012. The defendants filed a motion for summary judgment. That motion is fully briefed and ready for my decision.

     As a preliminary matter, I note that the plaintiff did not respond to the defendants' proposed findings of fact despite being warned twice that failing to do so would mean they would be considered uncontested for purposes of the motion under Civil L.R. 56(4). The defendants explained this in their motion, ECF No. 37, and Magistrate Judge William E. Duffin, to whom I referred this case for pretrial management, also told the plaintiff what would happen if he did not respond to the defendants' proposed facts, ECF No. 44 at 4–5. However, I will consider the plaintiff's declaration to the extent it is supported by personal knowledge, as well as his proposed findings of fact to the extent they are properly supported. I have also read the transcript of the plaintiff's deposition.

## I.  BACKGROUND

The plaintiff was and is an adult resident of the State of Wisconsin. ECF No. 39 at ¶ 1. Both defendant Michael Seeger and defendant Chad Melby were police officers with the City of Racine Police Department at all times relevant. *Id.*, ¶¶ 2–3.

At approximately 8:50 p.m. on September 22, 2012, Racine Police Department ("RPD") Dispatch received a call that a black male with a gray beard and a gray hoodie was standing at the rear of a building located in the area of 10th Street and Washington Avenue in Racine, and was selling crack-cocaine out of a prescription medication container, which had about 20 "rocks" in it. ECF No. 39 at ¶ 6.

Around 8:55 p.m., Seeger and Melby were dispatched to that area (10th Street and Washington Avenue) to respond to the complaint. ECF No. 39 at ¶ 8. Seeger suspected before arriving that the described suspect was the plaintiff, Roy Anderson. *Id.* at ¶ 9. Seeger had had contact with the plaintiff the month before on August 31, 2012. *Id.* at ¶¶ 9–10. In August, Seeger had been responding to a complaint at 1018 Hilker Drive where he encountered Anderson. *Id.* at ¶ 10 An individual who was with Anderson on that date was found to be in possession of cocaine and subsequently arrested. *Id.* at ¶ 10. According to Seeger, during that interaction, the plaintiff was in possession of an empty circular white pill bottle found in his right front pants pocket. *Id.* The plaintiff disputes this and claims he did not have a pill bottle on him at the time. ECF No. 47 at 3. During the August 31 encounter, Anderson had had a gray beard and Seeger had seen Anderson, still with a gray beard, during the day on September 22. ECF no. 39 ¶ 11.

Seeger knew that the area—Hilker Drive and 10th Street as well as Washington Avenue around 955 Washington Avenue—was a high drug trafficking area. *Id.* at ¶ 12.

2

Before the officers arrived, the plaintiff was standing on the sidewalk behind his apartment building with two friends, Willie Dean and Joespheus Sanders. ECF No. 39 at ¶ 15. At some point, Dean told the plaintiff that police had been in the area and the plaintiff began walking around the side of the building with Sanders, toward the plaintiff's front door. *Id.* at ¶ 16.

As Seeger and Melby arrived on the scene, they observed two parties, later identified as the plaintiff and Sanders, standing on the north sidewalk in the 1000 block of 10th Street near the back of the apartments at 955 Washington Avenue. ECF No. 39 at ¶ 18. There was a clearly posted "no loitering" sign within 25 feet of where the plaintiff and Sanders stood. *Id.* at ¶ 19. The plaintiff matched the description given in the tip, although he was wearing a green winter coat over his gray hoodie. *Id.* at ¶ 20. After Anderson had been standing on the side of the building for only a few seconds, Seeger's unmarked police car drove up and over the curb, onto the sidewalk, and within a few feet of Anderson, while shining "high-beam" lights directly at the plaintiff. ECF No. 39 at ¶ 17; ECF No. 47 at 2; ECF No. 49 at ¶ 20. Anderson took a few steps steps back and away from the officers and into a grassy area, turned his body away from the officers, and dropped a pill bottle on the ground. ECF No. 39 at ¶ 23; *see also* ECF No. 47 at 2. Seeger and Melby exited the unmarked police car and approached the plaintiff. *Id.* at ¶ 21. Though the plaintiff was not sure who was approaching him since the lights were so bright, he assumed it was the police because Dean had just told him the police had been in the area. *Id.* at ¶ 22.

Melby grabbed Anderson by the arm while Seeger simultaneously questioned and frisked him. ECF No. 39 at ¶ 25; ECF No. 47 at 2. While frisking the plaintiff for weapons,

3

Seeger felt a small circular object in the plaintiff's front right pants pocket. ECF No. 39 at ¶ 27. Seeger asked the plaintiff if he could search his pockets. *Id.* at ¶ 28. According to the plaintiff, he refused Seeger's request but Seeger nonetheless searched his pockets. *Id.*

Seeger found two clear plastic baggy corners and U.S. currency in the following denominations: two counterfeit $20.00 bills with the same serial number (EE19675240C), two $10.00 bills, three $5.00 bills, and five $1.00 bills. ECF No. 39 at ¶¶ 29–30. There was nothing circular in the pocket. ECF No. 49 at ¶ 7. After searching the plaintiff, Seeger turned his attention to the grassy area that the plaintiff had backed into when the officers arrived and found a while circular pill bottle. ECF No. 39 at ¶ 31; ECF No. 47 at 2. Seeger picked up the pill bottle, opened it, and found four clear knotted plastic baggy corners containing a white chunky substance. *Id.* at ¶ 32.

Seeger believed, based on the fact the plaintiff was found in possession of four individually packaged baggies of suspected crack cocaine, two empty plastic baggy corners, and $40.00 in small bills, that the plaintiff was selling and distributing illegal drugs. ECF No. 39 at ¶¶ 35–36, 38. A records check revealed that the plaintiff was on probation/parole for possession with intent to sell cocaine, so the officers contacted the plaintiff's agent, who placed him on a probation/parole hold. *Id.* at ¶ 39. The plaintiff and Sanders were also issued municipal citations for loitering. *Id.* at ¶ 40. Seeger and Melby took the plaintiff into custody and transported him to the Racine County Jail. *Id.* at ¶ 41. Seeger returned to the police department and confirmed that the substance in the plaintiff's possession was cocaine. *Id.* at ¶ 42.

## II. ANALYSIS

## A. Summary Judgment and Qualified Immunity Standards

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

Defendants argue that they are entitled to qualified immunity even if a reasonable juror could find that they violated the plaintiff's Fourth Amendment rights. To defeat the qualified immunity defense, a plaintiff must show that: (1) the defendant violated a constitutional right and (2) the right was clearly established at the time the violation occurred. *Doe v. Vill. of Arlington* Heights, 782 F.3d 911, 915 (7th Cir. 2015). The plaintiff bears the burden of establishing that the right was clearly established and "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. A plaintiff may do this by identifying "a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017).

## B. The Stop

The initial encounter between the plaintiff and the defendants is governed by the analysis in *Terry v.* Ohio, 329 U.S. 1 (1968). Under *Terry,* to conduct an investigatory stop, an officer must have "'specific and articulable facts which, taken together with the rational inferences drawn from those facts, reasonably warrant the intrusion.'" *United States v. Rivers*, 121 F.3d 1043, 1045 (7th Cir.1997) (quoting *Terry*, 392 U.S. at 21). To determine whether reasonable suspicion existed to justify an investigatory stop, courts

5

"'must look at the totality of the circumstances of each case to see whether the detaining officer [had] a particularized and objective basis for suspected legal wrongdoing.'" *United States v. Richmond*, 924 F.3d 404, 411 (7th Cir. 2019) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotations omitted)).

To begin, the defendants do not contest that the plaintiff was seized. A seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry*, 392 U.S. at 19 n. 16. A show of authority can constitute a seizure when a reasonable person would no longer feel free "to disregard the police and go about his business." *Florida v. Bostick*, 501. "While an officer's application of physical force always constitutes a seizure, a 'show of authority' alone is insufficient; an officer's show of authority becomes a seizure only if the person at whom it is directed actually submits to that authority." *United States v. Griffin*, 652 F.3d 793, 799 (7th Cir. 2011) (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). In other words, "[i]f no physical force simultaneously accompanied the officer's show of authority and a person chose to ignore or reject that show of authority, the defendant is not seized until the officer applied physical force and the person submitted." *United States v. $32,400.00 in U.S. Currency*, 82 F.3d 135, 138 (7th Cir. 1996).

In this case, Seeger drove his vehicle up and over the curb, with his high beams shining directly on Anderson, and stopped his car only a few feet away from the plaintiff. Such an action constitutes a show of authority. Anderson, upon seeing a car drive over the curb and directly at him, would not have reasonably felt free to disregard the car and go about his business. Although Anderson was not certain the car belonged to the police, all parties agree that he suspected as much. The question, then, is whether Anderson

6

submitted to this show of authority. Although he took a few steps away from the car and turned slightly, Anderson claims this was not an evasive action but rather a natural reaction to being closely approached by a car with its high beams on. A reasonable juror could agree with this characterization. Anderson did drop a pill bottle, but he did not attempt to flee, nor did he continue on his path around the building or disobey any orders from the police. Put another way, Anderson did not ignore or reject the officer's show of authority. He was therefore seized when Officer Seeger drove up and over the curb.

At the time the officers arrived, they had the following information: (1) an anonymous tip that a black male with a gray beard wearing a gray hoodie was selling drugs at 10th Street and Washington Avenue; (2) Seeger had seen the plaintiff in the area in the past, including earlier that day at which time he observed the plaintiff had a gray beard; (3) Seeger had prior contact with the plaintiff the month before, at which time someone the plaintiff was with was arrested for drug possession;[1] (4) the area was known for drug trafficking. "When evaluating the reasonableness of a police intrusion, [I] look at the totality of the circumstances" rather than relevant factors in isolation. *Richmond*, 924 F.3d at 411.

Because anonymous tips "'seldom demonstrate[] the informant's basis of knowledge or veracity,' they alone usually are not reliable enough to establish reasonable suspicion." *United States v. Watson*, 900 F.3d 892, 895 (7th Cir. 2018) (quoting *Florida v. J.L.*, 529 U.S. 266, 270 (2000)). However, an anonymous tip, "adequately corroborated, may provide sufficient indicia of reliability to provide reasonable suspicion for an

---

[1] According to Seeger, he found a white pill bottle on the plaintiff during the August 31 encounter. ECF No. 39 at ¶ 10. The plaintiff states he did not have a pill bottle on him that day. ECF No. 47 at 3. As such, this is a disputed fact.

7

investigatory stop." *United States v. Bullock*, 632 F.3d 1004, 1013 (7th Cir. 2011). Defendants argue that the anonymous tip was corroborated: Anderson matched the description given in the tip and was in the area described. This argument misses the mark. A tip describing a subject's readily observable location and appearance, "does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *J.L.,* 529 U.S. at 272. In other words, there must be some "indicium of reliability related to the assertion of illegality." *Beal v. Beller*, 847 F.3d 897. Without this, an anonymous tip alone cannot support reasonable suspicion for a *Terry* stop.

Defendants also argue that their reasonable suspicion was supported by the fact that the plaintiff was in an area known to the police for drug trafficking. Although presence in in a high crime area alone does not suffice to support reasonable suspicion, it is a relevant consideration. *See Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000) (considering the suspect's presence in a high crime neighborhood, among other factors, in analyzing reasonable suspicion). The fact that the area was specifically known for the criminal activity reported in the tip is also relevant.

Defendants argue that Seeger's prior knowledge of and contact with the plaintiff also supported his reasonable suspicion. They are correct that prior contact with a suspect can be a relevant factor. *United States v. Jackson*, 300 F.3d 740, 746 (7th Cir. 2002) ("In addition, an officer's prior dealings with the particular individual or knowledge of a criminal record might also contribute to the basis for reasonable suspicion."). However, the mere fact that an officer had previously encountered an individual does not

support a *Terry* stop; rather, the nature of the prior encounter must contribute to the rational inference that the individual, at the time of the stop, is engaged in criminal activity. Here, Seeger's prior encounter with the plaintiff resulted in an arrest of one of the plaintiff's companions. However, Anderson himself does not appear to have been engaged in any illegal activity and was allowed to leave after being questioned. The fact that Seeger had previously seen Anderson in the area is not relevant except to the extent it allowed Seeger to conclude Anderson was the same person he had interacted with on August 21.

The question, then, is whether a reasonable jury must find that an anonymous tip with an uncorroborated assertion of illegal activity, presence in a high-crime area, and a previous encounter during which plaintiff's associate was arrested supported reasonable suspicion.[2] In *Beal v. Beller*, the Seventh Circuit considered a *Terry* stop and frisk based on an anonymous tip with an uncorroborated assertion of drug dealing, the fact that the individual was found in an area known for drug trafficking, and possible evasive behavior taken by the individual when he saw the police. The court found that "while a jury might find that these points support the Detectives' actions, it would not be required to do so."

---

[2] Defendants also argue that they had reasonable suspicion because plaintiff was loitering. Because they first raised this argument in their reply brief, it is waived. *See Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019). Even if it were not waived, this argument would fail for at least two reasons. First, all parties agree that Anderson had been standing on the side of the building for only a few seconds when the officers arrived and loitering necessarily requires a longer period of time. Second, Racine city ordinances at the time of the stop did not prohibit simple loitering; rather they prohibited: (1) loitering (2) in a manner not usual for law abiding individuals (3) under circumstances that warrant alarm for the safety of persons or property in the vicinity. Racine City Ordinances § 25.04.010 (August 31, 2012). The presence of "no loitering" signs does nothing to change the prohibited behavior. Defendants do not argue that they had reason to suspect Anderson was loitering in manner not usual for law abiding citizens under circumstances that warranted alarm. It is worth noting that Anderson was standing outside his own apartment building, which is quite usual for law abiding individuals.

9

Case 2:18-cv-01498-LA   Filed 09/28/20   Page 9 of 16   Document 52

847 F.3d 897, 904 (7th Cir. 2017). The anonymous tip and Anderson's presence in an area known for drug trafficking, then, are not sufficient to require a reasonable juror to find reasonable suspicion and I must determine whether Seeger's prior contact with Anderson tips the scales.

Generally, when courts have considered prior knowledge of a person as relates to reasonable suspicion the prior knowledge has been of criminal behavior by the person in question. *See, e.g., United States v. Mitchell,* 256 F.3d 734, 737 (7th Cir. 2001) (Officers were aware of the Mitchell's "violent and illicit past," as well as his "propensity to carry guns," contributing to reasonable suspicion.); *United States v. Jackson,* 300 F.3d 740, 746 (7th Cir. 2002) (Fact that suspect had been arrested before at same location while armed supported a reasonable suspicion that he presented a danger to the officer's safety). Here, Seeger and Melby did not have, at the time of the stop, knowledge of past criminal actions by the plaintiff.[3]

Anderson's presence at the scene of an arrest may be relevant, but I do not find that it compels a reasonable juror to find the officers had reasonable suspicion, even considered alongside the anonymous tip and Anderson's presence in a high-crime area. However, the plaintiff has not identified, nor have I found, any cases where an officer acting under similar circumstances was found to have violated the Fourth Amendment, and I cannot say the lawfulness of the initial stop was beyond debate. Therefore, the initial

---

[3] Defendants argue that a records check of Anderson indicated he was on probation for possession with intent to sell cocaine. However, the record indicates that this check occurred after Anderson was arrested on September 22, 2012. *See* ECF no. 40-1 page 4 ("Anderson was taken into custody and placed into a transportation vehicle. A record check of Anderson indicated he was on probation/parole for possession w/intent-cocaine.").

10

stop of Anderson is protected by qualified immunity and the defendants' motion for summary judgment is granted as regards claims based on the initial stop.

### C. The Frisk

A frisk is analyzed separately from an initial stop. *United States v. Williams*, 731 F.3d 678, 683 (7th Cir. 2013). "An officer performing a *Terry* stop may not automatically frisk the individual subject to the stop; the officer must have some articulable suspicion that the subject is 'armed and dangerous.'" *Green v. Newport*, 868 F.3d 629, 635 (7th Cir. 2017) (quoting *Arizona v. Johnson*, 555 U.S. 323, 327 (2009)). Defendants argue that they frisked the plaintiff based on Officer Seeger's training and experience that drug dealers often carry weapons.

"The authority to frisk is not automatic in a drug investigation" and the officers did not observe anything indicating Anderson was dangerous. *United States v. Lopez*, 907 F.3d 472, 486 (7th Cir. 2018). However, as with the initial stop, I cannot say the lawfulness of the frisk was beyond debate when it occurred. In fact, Seventh Circuit precedent at the time of the frisk arguably supports the assertion that officers are justified in frisking individuals during drug investigations. *See, e.g.*, *United States v. Rhodes*, 229 F.3d 659, 661 (7th Cir. 2000) ("Guns are among the tools of the drug trade."); *United States v. Askew*, 402 F.3d 496, 508 (7th Cir. 2005) ("Drug arrests warrant intrusive tactics because of their inherent danger.") Therefore, Seeger's frisk of the plaintiff is protected by qualified immunity and defendants' motion for summary judgment is granted as regards claims based on the frisk.

### D. The Search of Anderson's Pockets

11

In searching Anderson's pockets, Seeger conducted a search separate from the *Terry* stop or related frisk. *See Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) ("If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry*."). Because Anderson had not yet been arrested, this search must be justified by probable cause. *Id.* at 376. The defendants seem to rely on the "plain feel" doctrine to support their belief that Anderson was in possession of contraband. Under the plain feel doctrine, an officer can extend the scope of his search if, during a lawful frisk, the officer has probable cause to believe he or she feels contraband. *Id.* Defendants appear to argue that this standard was met when Seeger felt a "small circular object" in Anderson's front right pants pocket.

The problem with this argument is obvious: small circular objects are not contraband. To be sure, contraband can consist of small circular objects, but Seeger does not claim he felt anything more specific than a "small circular object" and does not claim he believed the object to be contraband. The search of Anderson's pocket was not "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs or other hidden instruments for the assault of the police officer" and was therefore not a part of a valid frisk under *Terry*. *Terry*, 392 U.S. at 29-30. Nor was it based on probable cause to believe Anderson was carrying contraband, which cannot be supported merely by an officer's belief that he or she felt a small circular object. A reasonable jury could find that this search violated the plaintiff's Fourth Amendment right to be free of unreasonable searches.

The officers are not entitled to qualified immunity regarding the search of the plaintiff's pockets. The standard for escalating a frisk under *Terry* into a more thorough

12

search had been established for over a decade when this search occurred: if the officer "feels an object whose contour and mass makes its identity immediately apparent" as contraband, then the object's warrantless seizure is justified. *Dickerson*, 508 U.S. at 375–76. In failing to follow this standard, the officers violated clearly established law and their actions are therefore not protected by qualified immunity. I will deny the defendants' motion for summary judgment as regards claims based on the search of Anderson's pockets.

### E. The Search of the Grassy Area and the Pill Bottle

Defendants argue that their search of the grassy area around the plaintiff and subsequent search of the pill bottle they found there were justified under the plain view doctrine. Under that doctrine, the warrantless seizure of an object is permitted if: "(1) the officer was lawfully present in the place from where he viewed the item, (2) the item was in plain view, and (3) its incriminating nature was immediately apparent." *United States v. Cellitti*, 387 F.3d 618, 623 (7th Cir. 2004) (internal quotations omitted). "For the incriminating nature to be immediately apparent, the officer must have probable cause to believe that the item is contraband or otherwise linked to criminal activity." *Id.* at 624. In other words, an object's incriminating nature may be "immediately apparent" even when further investigation is needed so long as the officers have probable cause to believe it is contraband or evidence of a crime. *See Texas v. Brown*, 460 U.S. 730, 737 (1983).

Both parties agree that the officers were lawfully present: they had been dispatched to the area to investigate a tip regarding the sale of crack-cocaine from a pill bottle. The item was also in plain view, lying in the grass in a public area. Whether the pill

13

bottle's incriminating nature was immediately apparent is a closer question but given the specifics of the tip the officers had probable cause to believe it was related to criminal activity. Plaintiff argues that because he discarded the bottle as a result of an illegal stop, plain view doctrine should not apply. In support of this argument, plaintiff cites to cases from the Supreme Court of Pennsylvania and the Supreme Court of Louisiana. These cases are neither binding nor persuasive and even if they applied, the officers would still be protected by qualified immunity. Because a reasonable jury could not find that the plaintiff's Fourth Amendment right was violated by the seizure or search of the pill bottle, I will grant the defendants' motion for summary judgment as regards the related claims.

### F. The Arrest

Probable cause for an arrest is established by a reasonable belief that a person committed a crime. *Phillips v. Allen*, 668 F.3d 912, 914 (7th Cir. 2012). Defendants do not offer a detailed argument regarding the plaintiff's arrest but do assert it was supported by probable cause.[4] Even without the evidence discovered in the search of Anderson's pockets, I agree. At the time of the arrest, the officers had received a tip of a black male with a gray beard and a gray hoodie selling crack-cocaine from a pill bottle behind a building in the area of 10th Street and Washington Avenue. They arrived at the described location to find Anderson, a black male with a gray beard and a gray hoodie, standing next to a pill bottle containing crack-cocaine. Taken together, these facts are sufficient to support a reasonable belief that the plaintiff had committed a crime.

---

[4] Defendants argue in their reply brief that the officers had probable cause to arrest the plaintiff as soon as they discovered the counterfeit bills. Because defendants first raised this argument in their reply brief, it is waived. *See Wonsey,* 940 F.3d at 398. Additionally, the record seems to indicate that the officers were not aware the bills were counterfeit at the time of the arrest. *See* ECF no. 40-1 p. 3.

14

## G. Whether the Claims are Heck Barred

Finally, the defendants argue that the claims may be barred by *Heck v. Humphrey*. 512 U.S. 477 (1994). "*Heck* concludes that a person cannot use § 1983 to collect damages on a theory irreconcilable with a conviction's validity, unless that conviction has been set aside." *Johnson v. Rogers*, 944 F.3d 966, 969 (7th Cir. 2019). There is an exception, however, for Fourth Amendment claims because, "unlike fair trial claims, Fourth Amendment claims as a group do not necessarily imply the invalidity of a criminal conviction, and so such claims are not suspended under the *Heck* bar to suit." *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008). Further, when a defendant was convicted based on a guilty plea rather than a trial, as Anderson was, "the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized." *Mordi v. Ziegler*, 870 F.3d 703, 707 (7th Cir. 2017).

Defendants nonetheless argue that the plaintiff's claims may be *Heck* barred to the extent his allegations necessarily imply the invalidity of his conviction, notwithstanding his guilty plea. They cite to *Okoro v. Callaghan*, a case in which Ralphael Okoro had pled guilty to an attempt to sell officers heroin but whose claims were ruled to be *Heck* barred. 324 F.3d 488, 489 (7th Cir. 2003). Throughout his civil suit, Okoro insisted that there had never been any drugs, and that he had instead attempted to sell the officers gems. *Id.* The Seventh Circuit held that a finding for Okoro would therefore necessarily invalidate his conviction. *Id.* at 490. Here, there is no such problem. Anderson does not claim he was innocent; he admits now just as he admitted when he pled guilty that he was in possession of the drugs. His conviction rests on his

15

guilty plea rather than any evidence found on September 22, 2012, and a finding in favor of Anderson in this cause would not undermine the factual basis of his conviction. Therefore, his claims are not *Heck* barred.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that defendants' motion for summary judgment (ECF No. 37) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to the plaintiff's claims based on the initial stop, the frisk, the search of the grassy area, and the search and seizure of the pill bottle. The motion is denied as to the plaintiff's claims regarding the search of his pockets. The court will schedule a telephonic status conference to discuss the next steps in this case.

Dated in Milwaukee, Wisconsin, this 28th day of September, 2020.

          s/Lynn Adelman_____
          LYNN ADELMAN
          United States District Judge